# Supreme Court of Florida

_____

No. SC14-2107
_____

**IN RE:  AMENDMENTS TO RULES REGULATING THE FLORIDA BAR (BIENNIAL PETITION HOUSEKEEPING).**

[May 21, 2015]

PER CURIAM.

This matter is before the Court on the petition of The Florida Bar proposing amendments to the Rules Regulating the Florida Bar (Bar Rules).  See R. Regulating Fla. Bar 1-12.1.  We have jurisdiction.  See art. V, § 15, Fla. Const.

The Bar's petition in this case proposes both new Bar Rules and amendments to existing rules.  According to the petition, the proposals included here address "housekeeping" matters, in that the petition primarily recommends editorial changes, updates to the Bar Rules based on prior amendments, and other changes to codify long-standing practice.  The proposals were approved by the Board of Governors, and formal notice of the proposed amendments was published in The Florida Bar News.  The notice directed interested persons to file their comments directly with the Court.  The Court did not receive any comments.

The Bar proposes amendments to the following Bar Rules: 1-4.3 (Committees); 1-13.1 (Time); 2-7.3 (Creation of Sections and Divisions); 3-7.1 (Confidentiality); 3-7.11 (General Rule of Procedure); 4-1.4 (Communication); 4-1.18 (Duties to Prospective Client); 4-4.4 (Respect for Rights of Third Persons); 4-5.5 (Unlicensed Practice of Law; Multijurisdictional Practice of Law); 4-6.5 (Voluntary Pro Bono Plan); 6-3.11 (Fees); 10-2.1 (Generally); 18-1.1 (Purpose); 18-1.2 (Definitions); 18-1.3 (Activities); 18-1.4 (Supervision and Limitations); and 18-1.5 (Certification).  It also proposes amendments to the "Preamble: A Lawyer's Responsibilities" to the Rules of Professional Conduct.  Additionally, the Bar recommends the repeal of existing Bar Rule 6-3.7 (Emeritus Specialist Status). Finally, it proposes a new Subchapter 6-29 (Standards for Board Certification in Juvenile Law), which would include four new Bar Rules: 6-29.1 (Generally); 6-29.2 (Definitions); 6-29.3 (Minimum Standards); and 6-29.4 (Recertification). After fully considering the petition, the Court adopts these "housekeeping" amendments as proposed by the Bar.[1]

Accordingly, the Court adopts the amendments to the Rules Regulating the Florida Bar as set forth in the appendix to this opinion.  New language is indicated

---

1. The Court did make a non-substantive revision to Bar Rule 3-7.11(f)(1)(C)(ii)(a), to delete the phrase "to withhold entry of an order of suspension" at the end of that subdivision, in order to correct what appears to be a scrivener's error in the proposal.

by underscoring; deletions are indicated by struck-through type. The comments are offered for explanation and guidance only and are not adopted as an official part of the rules. The amendments shall become effective on October 1, 2015, at 12:01 a.m.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

Original Proceeding – Rules Regulating The Florida Bar

John F. Harkness, Jr., Executive Director, Mary Ellen Bateman, DEUP Division Director, and Elizabeth Clark Tarbert, Ethics Counsel, The Florida Bar, Tallahassee, Florida,

for Petitioner

**RULE 1-4.3 COMMITTEES**

The board of governors ~~shall~~will create an executive committee composed of the president, president-elect, chairs of the budget, communications, disciplinary review, <u>program evaluation</u> and legislation committees, president of the young lawyers division, 2 members of the board appointed by the president, and 3 members of the board elected by the board to act ~~up~~on ~~such~~ matters ~~as~~<u>that</u> arise and require disposition between meetings of the board; a budget committee composed of 9 members with 3-year staggered terms; grievance committees as provided for in chapter 3; unlicensed practice of law committees as provided for in chapter 10; and a professional ethics committee.

**RULE 1-13.1 TIME**

**(a) Computation.** In computing any period of time prescribed or allowed by the Rules Regulating The Florida Bar, the day of the act, event, or default from which the designated period of time begins to run ~~shall~~will not be included. The last day of the period so computed ~~shall~~will be included unless it is a Saturday, Sunday, or legal holiday, in which event the period ~~shall~~will run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

**(b) Additional Time after Service by Mail <u>or E-mail</u>.** When a person has the right or is required to do some act or take some proceeding within a prescribed period after service of a notice or other paper and the notice or paper is served by mail<u> or e-mail</u>, 5 days ~~shall~~will be added to the prescribed period.

**BYLAW 2-7.3 CREATION OF SECTIONS AND DIVISIONS**

Sections and divisions may be created or abolished by the board of governors as deemed necessary or desirable. <u>The Florida Bar will maintain current lists of its standing committees and divisions and will post the lists on its website.</u>

**(a) Sections.** ~~The following sections of The Florida Bar have been created by the board of governors:~~

(1) Administrative Law Section;

(2) Alternative Dispute Resolution Section;

(3) Appellate Practice Section;

(4) Business Law Section;

(5) City, County and Local Government Law Section;

(6) Criminal Law Section;

(7) Elder Law Section;

(8) Entertainment, Arts, and Sports Law Section;

(9) Environmental and Land Use Law Section;

(10) Equal Opportunities Law Section;

(11) Family Law Section;

(12) General Practice, Solo and Small Firm Section;

(13) Government Lawyer Section;

(14) Health Law Section;

(15) International Law Section;

(16) Labor and Employment Law Section;

(17) Public Interest Law Section;

(18) Real Property, Probate, and Trust Law Section;

(19) Tax Section;

(20) Trial Lawyers Section; and

(21)   Workers' Compensation Section.

**(b)   Divisions.**  The following divisions of The Florida Bar have been created by the board of governors:

(1)   Out-of-State Division; and

(2)   Young Lawyers Division.

**RULE 3-7.1        CONFIDENTIALITY**

**(a)   Scope of Confidentiality.**  All ~~matters~~records including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those disciplinary matters conducted in circuit courts, are property of The Florida Bar. All of those matters are confidential and will not be disclosed except as provided in these rules.  When disclosure is permitted under these rules, it will be limited to information concerning the status of the proceedings and any information that is part of the public record as defined in these rules.

Unless otherwise ordered by this court or the referee in proceedings under these rules, nothing in these rules ~~will~~ prohibits the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules, or from disclosing any documents or correspondence served on or provided to those persons except where disclosure is prohibited in Chapter 4 of these rules or by statutes and caselaw regarding attorney-client privilege.

(1) – (2)      [No Change]

(3)      *Probable Cause Cases*.  Any disciplinary case in which a finding of probable cause for further disciplinary proceedings has been entered is public information.  For purposes of this subdivision a finding of probable cause is deemed in those cases authorized by rule 3-3.2(a), for the filing of a formal complaint without the ~~prior necessity~~requirement of a finding of probable cause.

(4)      [No Change]

(5)      *Diversion or Referral to Grievance Mediation Program*.  Any disciplinary case that has been concluded by diversion to a practice and

- 6 -

professionalism enhancement program or by referral to the grievance mediation program is public information ~~up~~on the entry of such a recommendation.

(6) *Contempt Cases*. Contempt proceedings authorized elsewhere in these rules are public information even ~~though~~if the underlying disciplinary matter is confidential as defined in these rules.

(7) *Incapacity Not Involving Misconduct*. Proceedings for placement on the inactive list for incapacity not involving misconduct are public information ~~up~~on the filing of the petition with the Supreme Court of Florida.

(8) – (11)  [No Change]

(12) Disciplinary *Resignations and Disciplinary Revocations*. Proceedings involving petitions for disciplinary resignation or for disciplinary revocation as provided elsewhere in these rules, are public information.

**(b) – (m)  [No Change]**


**RULE 3-7.11    GENERAL RULES OF PROCEDURE**

**(a)  [No Change]**

**(b)  Process.**  Every member of The Florida Bar is charged with notifying The Florida Bar of ~~a~~any change of mailing address, e-mail address (unless the lawyer has been excused by The Florida Bar or court from e-filing and e-service) ~~or~~and military status. ~~Mailing of registered or certified papers or notices prescribed in these rules to the last mailing address of an attorney as shown by the official records in the office of the executive director of The Florida Bar shall be sufficient notice and service unless this court shall direct otherwise.~~ The Florida Bar may serve notice of formal complaints in bar proceedings by U.S. Postal Service certified mail return receipt requested to the bar member's record bar address unless the Supreme Court of Florida directs other service. Every ~~attorney~~lawyer of another state who is admitted pro hac vice~~permitted to practice for the purpose of~~in a specific case before a court of record ~~of this state~~in Florida may be served by ~~registered or~~U.S. Postal Service certified mail return receipt requested addressed to ~~said~~the ~~attorney~~lawyer in care of the Florida ~~attorney~~lawyer who was associated or appeared with the ~~attorney~~lawyer admitted pro hac vice ~~in the specific case for which the out-of-state attorney was permitted to practice~~ or

addressed to ~~said~~the ~~attorney~~Florida lawyer at any address listed by the ~~attorney~~lawyer in the pleadings in ~~such~~the case.

Provided, however, when a person is represented by counsel, service of process and notices ~~shall~~must be directed to counsel.

**(c)  Notice in Lieu of Process.**  Every member of The Florida Bar is within the jurisdiction of the Supreme Court of Florida and its agencies under these rules, and service of process is not required to obtain jurisdiction over respondents in disciplinary proceedings; but due process requires ~~the giving of~~ reasonable notice and ~~such~~this notice ~~shall~~will be effect~~ive~~ed by ~~the~~ service of the complaint ~~upon~~ the respondent by mailing a copy of The Florida Bar's formal complaint~~thereof~~ by ~~registered or~~ certified U.S. Postal Service mail return receipt requested to the ~~last known address of the~~ respondent's record bar address ~~according to the records of The Florida Bar~~ or ~~such~~a ~~later~~more current address ~~as~~that may be known to the person ~~effecting the service~~serving the complaint or other process.

When the respondent is represented by counsel in ~~the~~a referee proceeding~~matter~~, due process is satisfied by ~~the~~ service of the formal complaint ~~up~~on the respondent's counsel by mailing a copy ~~thereof~~ by ~~registered or~~ certified mail return receipt requested to the ~~last known~~record bar address of the respondent's counsel ~~according to the records of The Florida Bar~~ or ~~such~~a ~~later~~more current address ~~as~~that may be known to the person ~~effecting the service~~serving the complaint.

All other correspondence between The Florida Bar and respondents or their counsel, including bar inquiries that require responses during the investigative stage of a disciplinary proceeding, may be made by e-mail to the respondent's record bar e-mail address or the record bar e-mail address of respondent's counsel. E-mail correspondence is encouraged in all instances except in service of a formal complaint or subpoena, or where a court directs otherwise.  If a lawyer has been excused by The Florida Bar or court from e-filing and e-service, or service cannot be made by e-mail, service by first class postal mail is sufficient except where these rules or a court direct otherwise.

**(d)  Issuance of Subpoenas.**  Subpoenas for ~~the attendance of~~ witnesses' attendance and the production of documentary evidence ~~other than~~except before a circuit court ~~shall~~must be issued as follows:

(1)    *Referees*.  Subpoenas for ~~the attendance of~~ witnesses' attendance and production of documentary evidence before a referee ~~shall~~must be issued by the referee and ~~shall~~must be served either in the manner provided by law for the service of process or by an investigator employed by The Florida Bar.

(2)    *Grievance Committees*.  Subpoenas for ~~the attendance of~~ witnesses' attendance and the production of documentary evidence ~~shall~~must be issued by the chair or vice-chair of a grievance committee ~~in pursuance of~~as part of an investigation authorized by the committee.  ~~Such~~These subpoenas may be served by any member of ~~such~~the grievance committee, by an investigator employed by The Florida Bar, or in the manner provided by law for ~~the~~ service of process.

(3)    *Bar Counsel Investigations*.  Subpoenas for ~~the attendance of~~ witnesses' attendance and the production of documentary evidence before bar counsel ~~when same is conducting~~in an initial investigation ~~shall~~must be issued by the chair or vice-chair of a grievance committee to which the matter will be assigned, if appropriate.  ~~Such~~These subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.

(4)    *After Grievance Committee Action, But Before Appointment of Referee*.  Subpoenas for ~~the attendance of~~ witnesses' attendance and the production of documentary evidence before bar counsel when ~~same is~~ conducting further investigation after action by a grievance committee, but before appointment of a referee, ~~shall~~must be issued by the chair or vice-chair of the grievance committee to which the matter was assigned.  ~~Such~~These subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for ~~the~~ service of process.

(5)    *Board of Governors*.  Subpoenas for ~~the attendance of~~ witnesses' attendance and the production of documentary evidence before the board of governors ~~shall~~must be issued by the executive director and ~~shall~~must be served by an investigator employed by The Florida Bar or in the manner provided by law for ~~the~~ service of process.

(6)    *Confidential Proceedings*.  If the proceeding is confidential, a subpoena ~~shall~~must not name the respondent but ~~shall~~must style the proceeding as "Confidential Proceeding by The Florida Bar under the Rules of Discipline."

(7)    *Contempt.*

(A)    Generally.  Any persons who, without adequate excuse, fail to obey ~~such~~ a subpoena served ~~upon~~ them under these rules, may be cited for contempt of this court in the manner provided by this rule.

(B)    Subpoenas for Trust Accounting Records.  Members of the bar are under an obligation to maintain trust accounting records as required by these rules and, as a condition of the privilege of practicing law in Florida, may not assert any privilege personal to the lawyer that may be applicable to production of ~~such~~these records in any disciplinary proceedings under these rules.

(i)    A respondent who has been found in willful noncompliance with a subpoena for trust accounting records may be cited for contempt under this rule only if the disciplinary agency that issued the subpoena ~~shall have first~~has found that no good cause existed for the respondent's failure to comply.

(ii)    The disciplinary agency that issued the subpoena ~~shall~~must hear the issue of noncompliance and issue findings ~~thereon~~on the noncompliance within 30 days of a request for issuance of the notice of noncompliance.

(8)    *Assistance to Other Lawyer Disciplinary Jurisdictions.*  ~~Upo~~On receipt of a subpoena certified to be ~~duly~~ issued under the rules or laws of another lawyer disciplinary jurisdiction, the executive director may issue a subpoena directing a person domiciled or found within the state of Florida to give testimony and/or produce documents or other ~~things~~evidence for use in the other jurisdiction's lawyer disciplinary proceedings as directed in the subpoena of the other jurisdiction.  The practice and procedure applicable to subpoenas issued under this subdivision ~~shall~~will be that of the other jurisdiction, except that:

(A)    the testimony or production ~~shall~~must be only in the county ~~wherein~~in which the person resides or is employed, or as otherwise fixed by the executive director for good cause shown; and

(B)    compliance with any subpoena issued pursuant to this subdivision and contempt for failure in this respect ~~shall~~must be sought ~~as elsewhere provided in~~under these rules.

- 10 -

**(e)   Oath of Witness.**  Every witness in every proceeding under these rules ~~shall~~must be sworn to tell the truth.  Violation of this oath ~~shall be~~is an act of contempt of this court.

**(f)   Contempt.**  When a disciplinary agency, as defined elsewhere in these rules, finds that a person is in contempt under these rules, ~~such~~that person may be cited for contempt in the following manner:

(1)   *Generally.*

(A)   Petition for Contempt and Order to Show Cause.  When a person is found in contempt by a disciplinary agency, bar counsel ~~shall~~must file a petition for contempt and order to show cause with the Supreme Court of Florida.

(B)   Order to Show Cause; Suspension for Noncompliance with Subpoena for Trust Accounting Records.  On review of a petition for contempt and order to show cause, the supreme court may issue an order directing the person to show cause why ~~such~~the person should not be held in contempt and appropriate sanctions imposed.

On review of a petition for contempt and order to show cause for noncompliance with a trust accounting subpoena, the supreme court may also issue an order suspending the respondent from the practice of law in Florida until ~~such time as~~the member fully complies with the subpoena and any further order of the court.

The order of the supreme court ~~shall~~must fix a time for a response.

(C)   Response to Order to Show Cause.

(i) Generally.  Any member subject to an order to show cause ~~shall~~must file a response as directed by the court.

(ii) Noncompliance with a Subpoena for Trust Account Records. Any member subject to an order to show cause for noncompliance with a subpoena for trust accounting records may request the court:

a.   ~~within 10 days of the filing of the petition for contempt and order to show cause~~to withhold entry of an order of suspension, if

- 11 -

filed within 10 days of the filing of the petition for contempt and order to show cause, or ~~such~~ another time ~~as~~ the court may direct in the order to show cause~~, to withhold entry of an order of suspension~~; or

b. ~~at any time after entry of an order of suspension,~~ to terminate or modify the order of suspension at any time after the order of suspension is issued.  The court may terminate, modify, or withhold entry of an order of suspension if the member establishes good cause for failure to comply with the subpoena for trust account records.

(D)    Failure to Respond to Order to Show Cause.  ~~Upo~~On failure to timely respond to an order to show cause, the matters alleged in the petition ~~shall be~~are deemed admitted and the supreme court may enter a judgment of contempt and impose appropriate sanctions.  Failure to respond may be an additional basis ~~on which a judgment of contempt may be entered and sanctions imposed.~~for the supreme court to enter a judgment of contempt and to impose sanctions.

(E)    Reply of The Florida Bar.  When a timely response to an order to show cause is filed, The Florida Bar ~~shall~~will have 10 days, or ~~such~~ another time period as the supreme court may order, from the date of filing ~~in which~~ to file a reply.

(F)    Supreme Court Action.  After ~~expiration of~~ the time to respond to an order to show cause has expired and no response is timely filed, or after the reply of The Florida Bar has been filed, or the time ~~therefore~~ has expired without ~~such~~any filing, the supreme court ~~shall~~will review the matter and issue an appropriate judgment.  ~~Such~~This judgment may include any sanction that a court may impose for contempt and, if the person found in contempt is a member of The Florida Bar, may include any disciplinary sanction authorized under these rules.

If the supreme court requires factual findings, the supreme court may direct appointment of a referee as ~~elsewhere~~ provided in these rules. Proceedings for contempt referred to a referee ~~shall~~must be processed in the same manner as disciplinary proceedings under these rules, including but not limited to the procedures provided ~~therein~~in these rules for conditional guilty pleas for consent judgments.  If the court determines it necessary to refer a request to terminate, modify, or withhold entry of an order of suspension based on a petition for contempt and order to show cause for noncompliance with a subpoena for trust account records to a referee for receipt of evidence, the referee proceedings

- 12 -

shallmust be expedited and conducted in the same manner as proceedings before a referee on a petition to terminate, modify, or withhold an order of emergency suspension, as elsewhere provided in these rules.

(G)     Preparation and Filing of Report of Referee and Record. The referee shallmust prepare and file a report and the record in cases brought under this rule.  The procedures provided for in the rule on procedure before a referee elsewhere under these rules shall apply to the preparation, filing, and review of the record herein.

(H)     Appellate Review of Report of Referee.  Any party to the contempt proceedings may seek review of the report of referee in the manner provided in these rules onfor appellate review of disciplinary proceedings under these rules.

(2)     *Failure to Respond to Official Bar Inquiries.*

(A)     Petition for Contempt and Order to Show Cause.  When a respondent is found in contempt by a disciplinary agency for failure to respond to an official bar inquiry without good cause shown, bar counsel shallmust file a petition for contempt and order to show cause with the Supreme Court of Florida.

(B)     Response to Petition for Contempt and Order to Show Cause.  The respondent shallwill have 10 days from the date of filing of a petition authorized by this subdivision in which to file a response.

(C)     Supreme Court Action.

(i)     Entry of Suspension Order.  After a response has been filed, or the time for a response has expired, and unless otherwise ordered by the court, an order shall be entered suspending the respondent for failure to respond to an official bar inquiry until further order of the court. The court will enter an order suspending the respondent for failure to respond to an official bar inquiry after the respondent files a response to the order to show cause or the time for filing a response has expired, unless the court orders otherwise.

(ii)     Assignment to Referee.  If the supreme court requires factual findings, the supreme court may direct appointment of a referee as elsewhere provided in these rules.  Proceedings for contempt referred to a referee shallmust be processed in the same manner as disciplinary proceedings under these

- 13 -

rules, including but not limited to the provisions provided for conditional guilty pleas for consent judgments.

**(g)    Court Reporters.**  Court reporters who are employees of The Florida Bar may be appointed to report any disciplinary proceeding.  If the respondent objects at least 48 hours in advance of the matter to be recorded, an independent contract reporter may be retained.  Reasonable costs for independent court reporter service shallwill be taxed to athe respondent for payment to The Florida Bar.

**(h)    Disqualification as Trier and AttorneyLawyer for Respondent Due to Conflict.**

(1)    *Grievance Committee Members, Members of the Board of Governors, and Employees of The Florida Bar.*  No grievance committee member, member of the board of governors, or employee of The Florida Bar shallmay represent a party other than The Florida Bar in disciplinary proceedings authorized under these rules.

(2)    *Former Grievance Committee Members, Former Board Members, and Former Employees.*  No former member of a grievance committee, former member of the board of governors, or former employee of The Florida Bar shallmay represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules if personally involved to any degree in the matter while a member of the grievance committee, the board of governors, or while an employee of The Florida Bar.

A former member of the board of governors, former member of any grievance committee, or former employee of The Florida Bar who did not participate personally in any way in the investigation or prosecution of the matter or in any related matter in which the attorneylawyer seeks to be a representative, and who did not serve in a supervisory capacity over suchthe investigation or prosecution, shallmay not represent any party except The Florida Bar for 1 year after suchthis service without the express consent of the board.

(3)    *Partners, Associates, Employers, or Employees of the Firms of Grievance Committee Members or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar.*  Members of the firms of grievance committee members or board members shallmay not represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules without the express consent of the board.

- 14 -

(4)    *Partners, Associates, Employers, or Employees of the Firms of Former Grievance Committee Members or Former Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar.* ~~Attorneys~~Lawyers in the firms of former board members or former grievance committee members ~~shall~~may not represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules for 1 year after the former member's service without the express consent of the board.

**(i)    Proceedings after Disbarment.**  The respondent may consent to or the court may order further proceedings after disbarment, which may include: an audit of trust, operating, or personal bank accounts, the cost of which may be assessed as provided ~~elsewhere~~ in these rules; a requirement ~~for~~that the respondent ~~to~~ provide a financial affidavit attesting to personal and business finances; and maintenance of a current mailing address for a stated period of time.

# CHAPTER 4  RULES OF PROFESSIONAL CONDUCT
# PREAMBLE:  A LAWYER'S RESPONSIBILITIES

A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice.

As a representative of clients, a lawyer performs various functions.  As an adviser, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications.  As an advocate, a lawyer zealously asserts the client's position under the rules of the adversary system.  As a negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others.  As an evaluator, a lawyer acts by examining a client's legal affairs and reporting about them to the client or to others.

In addition to these representational functions, a lawyer may serve as a third-party neutral, a nonrepresentational role helping the parties to resolve a dispute or other matter.  Some of these rules apply directly to lawyers who are or have served as third-party neutrals.  See, e.g., rules 4-1.12 and 4-2.4.  In addition, there are rules that apply to lawyers who are not active in the practice of law or to practicing lawyers even when they are acting in a nonprofessional capacity.  For example, a lawyer who commits fraud in the conduct of a business is subject to discipline for

engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.  See rule 4-8.4.

In all professional functions a lawyer should be competent, prompt, and diligent.  A lawyer should maintain communication with a client concerning the representation.  A lawyer should keep in confidence information relating to representation of a client except so far as disclosure is required or permitted by the Rules of Professional Conduct or by law.

A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs.  A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others.  A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials.  While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice, and the quality of service rendered by the legal profession.  As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law, and work to strengthen legal education.  In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system, because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority.  A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance.  Therefore, all lawyers should devote professional time and resources and use civic influence to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel.  A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.

Many of the lawyer's professional responsibilities are prescribed in the Rules of Professional Conduct and in substantive and procedural law.  A lawyer is also guided by personal conscience and the approbation of professional peers.  A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession, and to exemplify the legal profession's ideals of public service.

A lawyer's responsibilities as a representative of clients, an officer of the legal system, and a public citizen are usually harmonious. Zealous advocacy is not inconsistent with justice. Moreover, unless violations of law or injury to another or another's property is involved, preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and ~~thereby~~ heed their legal obligations, when they know their communications will be private.

In the practice of law, conflicting responsibilities are often encountered. Difficult ethical problems may arise from a conflict between a lawyer's responsibility to a client and the lawyer's own sense of personal honor, including obligations to society and the legal profession. The Rules of Professional Conduct often prescribe terms for resolving ~~such~~these conflicts. Within the framework of these rules, however, many difficult issues of professional discretion can arise. ~~Such~~These issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the rules. These principles include the lawyer's obligation to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous, and civil attitude toward all persons involved in the legal system.

Lawyers are officers of the court and they are responsible to the judiciary for the propriety of their professional activities. Within that context, the legal profession has been granted powers of self-government. Self-regulation helps maintain the legal profession's independence from undue government domination. An independent legal profession is an important force in preserving government under law, for abuse of legal authority is more readily challenged by a profession whose members are not dependent on the executive and legislative branches of government for the right to practice. Supervision by an independent judiciary, and conformity with the rules the judiciary adopts for the profession, assures both independence and responsibility.

Thus, every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest that it serves.

**Scope:**

The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the rules are imperatives, cast in the terms of "~~shall~~must," ~~or~~

"~~shall~~must not~~.~~," or "may not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the rules in which the lawyer has discretion to exercise professional judgment. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of ~~such~~that discretion. Other rules define the nature of relationships between the lawyer and others. The rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role.

The comment accompanying each rule explains and illustrates the meaning and purpose of the rule. The comments are intended only as guides to interpretation, whereas the text of each rule is authoritative. Thus, comments, even when they use the term "should," do not add obligations to the rules but merely provide guidance for practicing in compliance with the rules.

The rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers, and substantive and procedural law in general. Compliance with the rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion, and finally, when necessary, upon enforcement through disciplinary proceedings. The rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The rules simply provide a framework for the ethical practice of law. The comments are sometimes used to alert lawyers to their responsibilities under other law.

Furthermore, for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so. But there are some duties, ~~such as that of~~for example confidentiality under rule 4-1.6, which attach when the lawyer agrees to consider whether a client-lawyer relationship ~~shall~~will be established. See rule 4-1.18. Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.

Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary

assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors, and whether there have been previous violations.

Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption ~~in such a case~~ that a legal duty has been breached. In addition, violation of a rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating ~~such~~a substantive legal duty. Nevertheless, since the rules do establish standards of conduct by lawyers, a lawyer's violation of a rule may be evidence of a breach of the applicable standard of conduct.

**Terminology:**

"Belief" or "believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances.

"Consult" or "consultation" denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question.

"Confirmed in writing," when used in reference to the informed consent of a person, denotes informed consent that is given in writing by the person or a writing that a lawyer promptly transmits to the person confirming an oral informed consent. See "informed consent" below. If it is not feasible to obtain or transmit

the writing at the time the person gives informed consent, then the lawyer must obtain or transmit it within a reasonable time~~thereafter~~.

"Firm" or "law firm" denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship, or other association authorized to practice law; or lawyers employed in the legal department of a corporation or other organization.

"Fraud" or "fraudulent" denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information.

"Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

"Knowingly," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.

"Lawyer" denotes a person who is a member of The Florida Bar or otherwise authorized to practice in any court of the State of Florida.

"Partner" denotes a member of a partnership and a shareholder in a law firm organized as a professional corporation, or a member of an association authorized to practice law.

"Reasonable" or "reasonably" when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.

"Reasonable belief" or "reasonably believes" when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.

"Reasonably should know" when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.

"Screened" denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are

reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these rules or other law.

"Substantial" when used in reference to degree or extent denotes a material matter of clear and weighty importance.

"Tribunal" denotes a court, an arbitrator in a binding arbitration proceeding, or a legislative body, administrative agency, or other body acting in an adjudicative capacity. A legislative body, administrative agency, or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter.

"Writing" or "written" denotes a tangible or electronic record of a communication or representation, including handwriting, typewriting, printing, photostating, photography, audio or video recording, and ~~e-mail~~<u>electronic communications</u>. A "signed" writing includes an electronic sound, symbol or process attached to or logically associated with a writing and executed or adopted by a person with the intent to sign the writing.

## COMMENT

### Confirmed in writing

If it is not feasible to obtain or transmit a written confirmation at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time ~~thereafter~~. If a lawyer has obtained a client's informed consent, the lawyer may act in reliance on that consent so long as it is confirmed in writing within a reasonable time ~~thereafter~~.

### Firm

Whether 2 or more lawyers constitute a firm above can depend on the specific facts. For example, 2 practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way that suggests that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to information concerning the clients they

serve.  Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved.  A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by 1 lawyer is attributed to another.

With respect to the law department of an organization, including the government, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct.  There can be uncertainty, however, as to the identity of the client.  For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed.  A similar question can arise concerning an unincorporated association and its local affiliates.

Similar questions can also arise with respect to lawyers in legal aid and legal services organizations.  Depending upon the structure of the organization, the entire organization or different components of it may constitute a firm or firms for purposes of these rules.

### Fraud

When used in these rules, the terms "fraud" or "fraudulent" refer to conduct that has a purpose to deceive.  This does not include merely negligent misrepresentation or negligent failure to apprise another of relevant information.  For purposes of these rules, it is not necessary that anyone has suffered damages or relied on the misrepresentation or failure to inform.

### Informed consent

Many of the Rules of Professional Conduct require the lawyer to obtain the informed consent of a client or other person (e.g., a former client or, under certain circumstances, a prospective client) before accepting or continuing representation or pursuing a course of conduct.  See, e.g., rules 4-1.2(c), 4-1.6(a), 4-1.7(b), and 4-1.18.  The communication necessary to obtain such consent will vary according to the rule involved and the circumstances giving rise to the need to obtain informed consent.  The lawyer must make reasonable efforts to ensure that the client or other person possesses information reasonably adequate to make an informed decision.  Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably

necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives. In some circumstances it may be appropriate for a lawyer to advise a client or other person to seek the advice of other counsel. A lawyer need not inform a client or other person of facts or implications already known to the client or other person; nevertheless, a lawyer who does not personally inform the client or other person assumes the risk that the client or other person is inadequately informed and the consent is invalid. In determining whether the information and explanation provided are reasonably adequate, relevant factors include whether the client or other person is experienced in legal matters generally and in making decisions of the type involved, and whether the client or other person is independently represented by other counsel in giving the consent. Normally, ~~such~~these persons need less information and explanation than others, and generally a client or other person who is independently represented by other counsel in giving the consent should be assumed to have given informed consent.

Obtaining informed consent will usually require an affirmative response by the client or other person. In general, a lawyer may not assume consent from a client's or other person's silence. Consent may be inferred, however, from the conduct of a client or other person who has reasonably adequate information about the matter. A number of rules state that a person's consent be confirmed in writing. See, e.g., rule 4-1.7(b). For a definition of "writing" and "confirmed in writing," see terminology above. Other rules require that a client's consent be obtained in a writing signed by the client. See, e.g., rule 4-1.8(a). For a definition of "signed," see terminology above.

**Screened**

This definition applies to situations where screening of a personally disqualified lawyer is permitted to remove imputation of a conflict of interest under rules 4-1.11, 4-1.12, or 4-1.18.

The purpose of screening is to assure the affected parties that confidential information known by the personally disqualified lawyer remains protected. The personally disqualified lawyer should acknowledge the obligation not to communicate with any of the other lawyers in the firm with respect to the matter. Similarly, other lawyers in the firm who are working on the matter should be informed that the screening is in place and that they may not communicate with the personally disqualified lawyer with respect to the matter. Additional screening

measures that are appropriate for the particular matter will depend on the circumstances. To implement, reinforce, and remind all affected lawyers of the presence of the screening, it may be appropriate for the firm to undertake ~~such~~these procedures as a written undertaking by the screened lawyer to avoid any communication with other firm personnel and any contact with any firm files or other ~~materials~~information, including information in electronic form, relating to the matter, written notice and instructions to all other firm personnel forbidding any communication with the screened lawyer relating to the matter, denial of access by the screened lawyer to firm files or other ~~materials~~information, including information in electronic form, relating to the matter, and periodic reminders of the screen to the screened lawyer and all other firm personnel.

In order to be effective, screening measures must be implemented as soon as practicable after a lawyer or law firm knows or reasonably should know that there is a need for screening.


**RULE 4-1.4        COMMUNICATION**

   **(a) – (b)        [No Change]**


**COMMENT**

Reasonable communication between the lawyer and the client is necessary for the client to effectively participate in the representation.

**Communicating with client**

If these rules require that a particular decision about the representation be made by the client, subdivision (a)(1) requires that the lawyer promptly consult with and secure the client's consent prior to taking action unless prior discussions with the client have resolved what action the client wants the lawyer to take. For example, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer. See rule 4-1.2(a).

Subdivision (a)(2) requires the lawyer to reasonably consult with the client about the means to be used to accomplish the client's objectives. In some situations – depending on both the importance of the action under consideration and the feasibility of consulting with the client – this duty will require consultation prior to taking action. In other circumstances, such as during a trial when an immediate decision must be made, the exigency of the situation may require the lawyer to act without prior consultation. In such cases the lawyer must nonetheless act reasonably to inform the client of actions the lawyer has taken on the client's behalf. Additionally, subdivision (a)(3) requires that the lawyer keep the client reasonably informed about the status of the matter, such as significant developments affecting the timing or the substance of the representation.

A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. When a client makes a reasonable request for information, however, subdivision (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected.

Lawyers have particular responsibilities in communicating with clients regarding changes in firm composition. See Rule 4-5.8.

**Explaining matters**

The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so.

Adequacy of communication depends in part on the kind of advice or assistance that is involved. For example, when there is time to explain a proposal made in a negotiation, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that are likely to result in significant expense or to injure or coerce others. On the other hand, a lawyer ordinarily will not be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests and the client's overall requirements as to the character of representation. In certain circumstances, such as when a lawyer asks a client to

consent to a representation affected by a conflict of interest, the client must give informed consent, as defined in terminology.

Ordinarily, the information to be provided is that appropriate for a client who is a comprehending and responsible adult. However, fully informing the client according to this standard may be impracticable, for example, where the client is a child or suffers from mental disability. See rule 4-1.14. When the client is an organization or group, it is often impossible or inappropriate to inform every one of its members about its legal affairs; ordinarily, the lawyer should address communications to the appropriate officials of the organization. See rule 4-1.13. Where many routine matters are involved, a system of limited or occasional reporting may be arranged with the client.

### Withholding information

In some circumstances, a lawyer may be justified in delaying transmission of information when the client would be likely to react imprudently to an immediate communication. Thus, a lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates that disclosure would harm the client. A lawyer may not withhold information to serve the lawyer's own interest or convenience or the interests or convenience of another person. Rules or court orders governing litigation may provide that information supplied to a lawyer may not be disclosed to the client. Rule 4-3.4(c) directs compliance with such rules or orders.

## RULE 4-1.18     DUTIES TO PROSPECTIVE CLIENT

**(a)   Prospective Client.**  A person who ~~discusses~~consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

**(b)   Confidentiality of Information.**  Even when no client-lawyer relationship ensues, a lawyer who has ~~had discussions with~~learned information from a prospective client ~~shall~~may not use or reveal that information ~~learned in the consultation~~, except as rule 4-1.9 would permit with respect to information of a former client.

**(c)   Subsequent Representation.**  A lawyer subject to subdivision (b) ~~shall~~may not represent a client with interests materially adverse to those of a

prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be used to the disadvantage of that person in the matter, except as provided in subdivision (d).  If a lawyer is disqualified from representation under this rule, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in ~~such a~~the matter, except as provided in subdivision (d).

**(d)  Permissible Representation.**  When the lawyer has received disqualifying information as defined in subdivision (c), representation is permissible if:

(1)    [No Change]

(2)    the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and

(~~i~~A)  the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(~~ii~~B)  written notice is promptly given to the prospective client.

## COMMENT

Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice.  A lawyer's ~~discussions~~consultations with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and the lawyer sometimes required) to proceed no further.  Hence, prospective clients should receive some but not all of the protection afforded clients.

~~Not all persons who communicate information to a lawyer are entitled to protection under this rule.~~A person becomes a prospective client by consulting with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter.  Whether communications, including written, oral, or electronic communications, constitute a consultation depends on the circumstances.  For example, a consultation is likely to have occurred if a lawyer, either in person or through the lawyer's advertising in any medium, specifically requests or invites the submission of information about a potential representation without clear and reasonably understandable warnings and cautionary statements that limit the

lawyer's obligations, and a person provides information in response. In contrast, a consultation does not occur if a person provides information to a lawyer in response to advertising that merely describes the lawyer's education, experience, areas of practice, and contact information, or provides legal information of general interest. A person who communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, is not a "prospective client" within the meaning of subdivision (a).

It is often necessary for a prospective client to reveal information to the lawyer during an initial consultation prior to the decision about formation of a client-lawyer relationship. The lawyer often must learn ~~such~~this information to determine whether there is a conflict of interest with an existing client and whether the matter is one that the lawyer is willing to undertake. Subdivision (b) prohibits the lawyer from using or revealing that information, except as permitted by rule 4-1.9, even if the client or lawyer decides not to proceed with the representation. The duty exists regardless of how brief the initial conference may be.

In order to avoid acquiring disqualifying information from a prospective client, a lawyer considering whether to undertake a new matter should limit the initial ~~interview~~consultation to only ~~such~~ information as reasonably appears necessary for that purpose. Where the information indicates that a conflict of interest or other reason for non-representation exists, the lawyer should so inform the prospective client or decline the representation. If the prospective client wishes to retain the lawyer, and if consent is possible under rule 4-1.7, then consent from all affected present or former clients must be obtained before accepting the representation.

A lawyer may condition ~~conversations~~a consultation with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. See terminology for the definition of informed consent. If the agreement expressly so provides, the prospective client may also consent to the lawyer's subsequent use of information received from the prospective client.

Even in the absence of an agreement, under subdivision (c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be used to the disadvantage of the prospective client in the matter.

Under subdivision (c), the prohibition in this rule is imputed to other lawyers as provided in rule 4-1.10, but, under subdivision (d)(1), the prohibition and its imputation may be avoided if the lawyer obtains the informed consent, confirmed in writing, of both the prospective and affected clients. In the alternative, the prohibition and its imputation may be avoided if the conditions of subdivision (d)(2) are met and all disqualified lawyers are timely screened and written notice is promptly given to the prospective client. See terminology (requirements for screening procedures). Subdivision (d)(2)(i) does not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified.

Notice, including a general description of the subject matter about which the lawyer was consulted, and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.

The duties under this rule presume that the prospective client consults the lawyer in good faith. A person who consults a lawyer simply with the intent of disqualifying the lawyer from the matter, with no intent of possibly hiring the lawyer, has engaged in a sham and should not be able to invoke this rule to create a disqualification.

For the duty of competence of a lawyer who gives assistance on the merits of a matter to a prospective client, see rule 4-1.1. For a lawyer's duties when a prospective client entrusts valuables or papers to the lawyer's care, see chapter 5, Rules Regulating The Florida Bar.

**RULE 4-4.4       RESPECT FOR RIGHTS OF THIRD PERSONS**

**(a)**    In representing a client, a lawyer ~~shall~~may not use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person.

**(b)**    A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent ~~shall~~must promptly notify the sender.

## COMMENT

Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all ~~such~~these rights, but they include legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusions into privileged relationships, such as the client-lawyer relationship.

Subdivision (b) recognizes that lawyers sometimes receive a documents or electronically stored information that ~~were~~was mistakenly sent or produced by opposing parties or their lawyers. A document or electronically stored information is inadvertently sent when it is accidentally transmitted, such as when an e-mail or letter is misaddressed or a document or electronically stored information is accidentally included with information that was intentionally transmitted. If a lawyer knows or reasonably should know that ~~such~~ a document or electronically stored information was sent inadvertently, then this rule requires the lawyer to promptly notify the sender in order to permit that person to take protective measures. Whether the lawyer is required to take additional steps, such as returning the ~~original~~ document or electronically stored information, is a matter of law beyond the scope of these rules, as is the question of whether the privileged status of a document or electronically stored information has been waived. Similarly, this rule does not address the legal duties of a lawyer who receives a document that the lawyer knows or reasonably should know may have been wrongfully obtained by the sending person. For purposes of this rule, "document or electronically stored information" includes, in addition to paper documents, e-mail and other forms of electronically stored information, including embedded data (commonly referred to as "metadata"), that is ~~e-mail or other electronic modes of transmission~~ subject to being read or put into readable form. Metadata in electronic documents creates an obligation under this rule only if the receiving lawyer knows or reasonably should know that the metadata was inadvertently sent to the receiving lawyer.

Some lawyers may choose to return a document or delete electronically stored information unread, for example, when the lawyer learns before receiving the document that it was inadvertently sent ~~to the wrong address~~. Where a lawyer is not required by applicable law to do so, the decision to voluntarily return ~~such a~~the document or delete electronically stored information is a matter of professional judgment ordinarily reserved to the lawyer. See rules 4-1.2 and 4-1.4.

**RULE 4-5.5      UNLICENSED PRACTICE OF LAW;**
**                MULTIJURISDICTIONAL PRACTICE OF LAW**

(a)  **Practice of Law.**  A lawyer ~~shall~~may not practice law in a jurisdiction other than the lawyer's home state, in violation of the regulation of the legal profession in that jurisdiction, or in violation of the regulation of the legal profession in the lawyer's home state or assist another in doing so.

(b)  **Prohibited Conduct.**  A lawyer who is not admitted to practice in Florida ~~shall~~may not:

    (1) – (3)     [No Change]

(c)  **Authorized Temporary Practice by Lawyer Admitted in Another United States Jurisdiction.**  A lawyer admitted and authorized to practice law in another United States jurisdiction who has been neither disbarred or suspended from practice in any jurisdiction, nor disciplined or held in contempt in Florida by reason of misconduct committed while engaged in the practice of law permitted pursuant to this rule, may provide legal services on a temporary basis in Florida that are:

    (1)     ~~are~~ undertaken in association with a lawyer who is admitted to practice in Florida and who actively participates in the matter; or

    (2)     ~~are~~ in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer is authorized by law or order to appear in ~~such~~the proceeding or reasonably expects to be so authorized; or

    (3)     ~~are~~ in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, and the services are not services for which the forum requires pro hac vice admission:

        (A) – (B)     [No Change]

    (4)     ~~are~~ not within subdivisions (c)(2) or (c)(3), and

(A) – (B)     [No Change]

**(d)  Authorized Temporary Practice by Lawyer Admitted in a Non-United States Jurisdiction.**  A lawyer who is admitted only in a non-United States jurisdiction who is a member in good standing of a recognized legal profession in a foreign jurisdiction whose members are admitted to practice as lawyers or counselors at law or the equivalent and are subject to effective regulation and discipline by a duly constituted professional body or a public authority, and who has been neither disbarred or suspended from practice in any jurisdiction nor disciplined or held in contempt in Florida by reason of misconduct committed while engaged in the practice of law permitted pursuant to this rule does not engage in the unlicensed practice of law in Florida when on a temporary basis the lawyer performs services in Florida that are:

        (1)     ~~are~~ undertaken in association with a lawyer who is admitted to practice in Florida and who actively participates in the matter; or

        (2)     ~~are~~ in or reasonably related to a pending or potential proceeding before a tribunal held or to be held in a jurisdiction outside the United States if the lawyer is authorized by law or by order of the tribunal to appear in ~~such~~the proceeding or reasonably expects to be so authorized; or

        (3)     ~~are~~ in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding held or to be held in Florida or another jurisdiction and the services are not services for which the forum requires pro hac vice admission:

        (A) – (B)     [No Change]

        (4)     ~~are~~ not within subdivisions (d)(2) or (d)(3), and

        (A) – (B)     [No Change]

        (5)     ~~are~~ governed primarily by international law or the law of a non-United States jurisdiction in which the lawyer is a member.

### COMMENT

Subdivision (a) applies to unlicensed practice of law by a lawyer, whether through the lawyer's direct action or by the lawyer assisting another person.  A

lawyer may practice law only in a jurisdiction in which the lawyer is authorized to practice. A lawyer may be admitted to practice law in a jurisdiction on a regular basis or may be authorized by court rule or order or by law to practice for a limited purpose or on a restricted basis. Regardless of whether the lawyer is admitted to practice law on a regular basis or is practicing as the result of an authorization granted by court rule or order or by the law, the lawyer must comply with the standards of ethical and professional conduct set forth in these Rules Regulating the Florida Bar.

The definition of the practice of law is established by law and varies from one jurisdiction to another. Whatever the definition, limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons. This rule does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work. See rule 4-5.3. Likewise, it does not prohibit lawyers from providing professional advice and instruction to nonlawyers whose employment requires knowledge of law; for example, claims adjusters, employees of financial or commercial institutions, social workers, accountants, and persons employed in government agencies. In addition, a lawyer may counsel nonlawyers who wish to proceed pro se.

Other than as authorized by law, a lawyer who is not admitted to practice in Florida violates subdivision (b) if the lawyer establishes an office or other regular presence in Florida for the practice of law. This prohibition includes establishing an office or other regular presence in Florida for the practice of the law of the state where the lawyer is admitted to practice. For example, a lawyer licensed to practice law in New York could not establish an office or regular presence in Florida to practice New York law. Such activity would constitute the unlicensed practice of law. However, for purposes of this rule, a lawyer licensed in another jurisdiction who is in Florida for vacation or for a limited period of time, may provide services to their clients in the jurisdiction where admitted as this does not constitute a regular presence. ~~Presence may be regular even if the lawyer is not physically present here.~~ ~~Such a~~The lawyer must not hold out to the public or otherwise represent that the lawyer is admitted to practice law in Florida. Presence may be regular even if the lawyer is not physically present here.

Subdivision (b) also prohibits a lawyer who is not admitted to practice in Florida from appearing in a Florida court, before an administrative agency, or before any other tribunal in Florida unless the lawyer has been granted permission

to do so.  In order to be granted the permission, the lawyer must follow the applicable rules of the court, agency, or tribunal including, without limitation, the Florida Rules of Judicial Administration governing appearance by foreign ~~attorneys~~lawyers.  <u>While admission by the Florida court or administrative agency for the particular case authorizes the lawyer's appearance in the matter, it does not act as authorization to allow the establishment of an office in Florida for the practice of law.  Therefore, a lawyer licensed in another jurisdiction admitted in a case in Florida may not establish an office in Florida while the case is pending and the lawyer is working on the case.</u>

There are occasions in which a lawyer admitted and authorized to practice in another United States jurisdiction or in a non-United States jurisdiction may provide legal services on a temporary basis in Florida under circumstances that do not create an unreasonable risk to the interests of his or her clients, the public, or the courts.  Subdivisions (c) and (d) identify ~~such~~<u>these</u> circumstances.  <u>As discussed with regard to subdivision (b) above,</u> ~~T~~<u>t</u>his rule does not authorize a lawyer to establish an office or other regular presence in Florida without being admitted to practice generally here.  Furthermore, no lawyer is authorized to provide legal services pursuant to this rule if the lawyer is disbarred or suspended from practice in any jurisdiction or has been disciplined or held in contempt in Florida by reason of misconduct committed while engaged in the practice of law permitted pursuant to this rule.  The contempt must be final and not reversed or abated.

There is no single test to determine whether a lawyer's services are provided on a "temporary basis" in Florida and may therefore be permissible under subdivision (c).  Services may be "temporary" even though the lawyer provides services in Florida on a recurring basis or for an extended period of time, as when the lawyer is representing a client in a single lengthy negotiation or litigation.

Subdivision (c) applies to lawyers who are admitted to practice law in any United States jurisdiction, which includes the District of Columbia and any state, territory, or commonwealth of the United States.  The word "admitted" in subdivision (c) contemplates that the lawyer is authorized to practice in the jurisdiction in which the lawyer is admitted and excludes a lawyer who while technically admitted is not authorized to practice because, for example, the lawyer is on inactive status.  Subdivision (d) applies to lawyers who are admitted to practice law in a non-United States jurisdiction if the lawyer is a member in good standing of a recognized legal profession in a foreign jurisdiction, the members of which are admitted to practice as lawyers or counselors at law or the equivalent

and subject to effective regulation and discipline by a duly constituted professional body or a public authority.  Due to the similarities between the subsections, they will be discussed together.  Differences will be noted.

Subdivisions (c)(1)and (d)(1) recognize that the interests of clients and the public are protected if a lawyer admitted only in another jurisdiction associates with a lawyer licensed to practice in Florida.  For these subdivisions to apply, the lawyer admitted to practice in Florida could not serve merely as a conduit for the out-of-state lawyer, but would have to share actual responsibility for the representation and actively participate in the representation.  To the extent that a court rule or other law of Florida requires a lawyer who is not admitted to practice in Florida to obtain admission pro hac vice prior to appearing in court or before a tribunal or to obtain admission pursuant to applicable rule(s) prior to appearing before an administrative agency, this rule requires the lawyer to obtain that authority.

Lawyers not admitted to practice generally in Florida may be authorized by law or order of a tribunal or an administrative agency to appear before the tribunal or agency.  This authority may be granted pursuant to formal rules governing admission pro hac vice or pursuant to formal rules of the agency.  Under subdivision (c)(2), a lawyer does not violate this rule when the lawyer appears before a tribunal or agency pursuant to ~~such~~this authority.  As with subdivisions (c)(1) and (d)(1), to the extent that a court rule or other law of Florida requires a lawyer who is not admitted to practice in Florida to obtain admission pro hac vice prior to appearing in court or before a tribunal or to obtain admission pursuant to applicable rule(s) prior to appearing before an administrative agency, this rule requires the lawyer to obtain that authority.

Subdivision (c)(2) also provides that a lawyer rendering services in Florida on a temporary basis does not violate this rule when the lawyer engages in conduct in anticipation of a proceeding or hearing in a jurisdiction in which the lawyer is authorized to practice law or in which the lawyer reasonably expects to be admitted pro hac vice.  Examples of ~~such~~this conduct include meetings with the client, interviews of potential witnesses, and the review of documents. Similarly, a lawyer admitted only in another jurisdiction may engage in conduct temporarily in Florida in connection with pending litigation in another jurisdiction in which the lawyer is or reasonably expects to be authorized to appear, including taking depositions in Florida.

Subdivision (d)(2) is similar to subdivision (c)(2), however, the authorization in (d)(2) only applies to pending or potential proceedings before a tribunal to be held outside of the United States.

Subdivisions (c)(3) and (d)(3) permit a lawyer admitted to practice law in another jurisdiction to perform services on a temporary basis in Florida if those services are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services are performed for a client who resides in or has an office in the lawyer's home state, or if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice. The lawyer, however, must obtain admission pro hac vice in the case of a court-annexed arbitration or mediation if court rules or law so require. The lawyer must file a verified statement with The Florida Bar in arbitration proceedings as required by rule 1-3.11 unless the lawyer is appearing in an international arbitration as defined in the comment to that rule. A verified statement is not required if the lawyer first obtained the court's permission to appear pro hac vice and the court has retained jurisdiction over the matter. For the purposes of this rule, a lawyer who is not admitted to practice law in Florida who files more than 3 demands for arbitration or responses to arbitration in separate arbitration proceedings in a 365-day period shall beis presumed to be providing legal services on a regular, not temporary, basis; however, this presumption shalldoes not apply to a lawyer appearing in international arbitrations as defined in the comment to rule 1-3.11.

Subdivision (c)(4) permits a lawyer admitted in another jurisdiction to provide certain legal services on a temporary basis in Florida that are performed for a client who resides or has an office in the jurisdiction in which the lawyer is authorized to practice or arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted but are not within subdivisions (c)(2) or (c)(3). These services include both legal services and services that nonlawyers may perform but that are considered the practice of law when performed by lawyers. When performing services which may be performed by nonlawyers, the lawyer remains subject to the Rules of Professional Conduct.

Subdivisions (c)(3), (d)(3), and (c)(4) require that the services arise out of or be reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted. A variety of factors evidence such athis relationship. The lawyer's client may have been previously represented by the lawyer, or may be resident in or have substantial contacts with the jurisdiction in which the lawyer is admitted.

The matter, although involving other jurisdictions, may have a significant connection with that jurisdiction. In other cases, significant aspects of the lawyer's work might be conducted in that jurisdiction or a significant aspect of the matter may involve the law of that jurisdiction. The necessary relationship might arise when the client's activities or the legal issues involve multiple jurisdictions, ~~such as~~for example, when the officers of a multinational corporation survey potential business sites and seek the services of their lawyer in assessing the relative merits of each. In addition, the services may draw on the lawyer's recognized expertise developed through regular practice of law in a body of law that is applicable to the client's particular matter.

Subdivision (d)(4) permits a lawyer admitted in a non-United States jurisdiction to provide certain services on a temporary basis in Florida that are performed for a client who resides in or has an office in the jurisdiction where the lawyer is authorized to practice or arise out of or are reasonably related to a matter that has a substantial connection to a jurisdiction in which the lawyer is authorized to practice to the extent of that authorization but are not within subdivisions (d)(2) and (d)(3). The scope of the work the lawyer could perform under this provision would be limited to the services the lawyer may perform in the authorizing jurisdiction. For example, if a German lawyer came to the United States to negotiate on behalf of a client in Germany, the lawyer would be authorized to provide only those services that the lawyer is authorized to provide for that client in Germany. Subdivision (d)(5) permits a lawyer admitted in a non-United States jurisdiction to provide services in Florida that are governed primarily by international law or the law of a non-United States jurisdiction in which the lawyer is a member.

A lawyer who practices law in Florida pursuant to subdivisions (c), (d), or otherwise is subject to the disciplinary authority of Florida. A lawyer who practices law in Florida pursuant to subdivision (c) must inform the client that the lawyer is not licensed to practice law in Florida.

The Supreme Court of Florida has determined that it constitutes the unlicensed practice of law for a lawyer admitted to practice law in a jurisdiction other than Florida to advertise to provide legal services in Florida which the lawyer is not authorized to provide. The rule was adopted in 820 So. 2d 210 (Fla. 2002). The court first stated the proposition in 762 So. 2d 392, 394 (Fla. 1999). Subdivisions (c) and (d) do not authorize advertising legal services ~~to prospective clients~~ in Florida by lawyers who are admitted to practice in jurisdictions other than Florida. Whether and how lawyers may communicate the availability of their

- 37 -

services ~~to prospective clients~~ in Florida is governed by ~~rules 4-7.1 through 4-7.10~~subchapter 4-7.

A lawyer who practices law in Florida is subject to the disciplinary authority of Florida.


**RULE 4-6.5     VOLUNTARY PRO BONO PLAN**

**(a)   [No Change]**

**(b)   Standing Committee on Pro Bono Legal Service.**  The president-elect of The Florida Bar is responsible for appointing a standing committee on pro bono legal service to the poor.

(1)   *Composition of the Standing Committee.*  The standing committee consists of no more than 25 members and includes, but is not ~~be~~ limited to:

(A)     5 past or current members of the board of governors of The Florida Bar, 1 of whom is the chair or a member of the access to the legal system committee of the board of governors;

(B) – (E)     [No Change]

(F)     2 public members, 1 of whom ~~shall be~~is a representative of the poor;

(G)     the president or designee of the Board of Directors of Florida Legal Services, Inc.;~~and~~

(H)     1 representative of the ~~out-of-state~~Out-of-State division of The Florida Bar~~.~~; and

(I)  the president or designee of the Young Lawyers Division of The Florida Bar.

(2)     [No Change]


- 38 -

**(c) Circuit Pro Bono Committees.** There will be 1 circuit pro bono committee in each of the judicial circuits of Florida. In each judicial circuit the chief judge of the circuit, or the chief judge's designee, shall appoint and convene the initial circuit pro bono committee and the committee will appoint its chair.

      (1)    [No Change]

      (2)    Responsibilities of Circuit Pro Bono Committee. The circuit pro bono committee will:

            (A) – (D)    [No Change]

            (E)    encourage more lawyers to participate in pro bono activities by preparing a plan that provides for various support and educational services for participating pro bono attorneys, which, to the extent possible, should include:

                  (i) – (iv)    [No Change]

                  (v)    ~~the availability of~~ consultation with attorneys who have expertise in areas of law with respect to which a volunteer lawyer is providing pro bono legal service;

                  (vi) – (viii)  [No Change]

**(d)** ~~**Suggested Pro Bono Service Opportunities**~~ **<u>Pro Bono Service Opportunities</u>.** The following are suggested pro bono service opportunities that should be included in each circuit plan:

      (1)    represent~~ation of~~ clients through case referral;

      (2)    interview~~ing of~~ prospective clients;

      (3)    ~~participation~~<u>participate</u> in pro se clinics and other clinics in which lawyers provide advice and counsel;

      (4)    act~~ing~~ as co-counsel on cases or matters with legal assistance providers and other pro bono lawyers;

(5) ~~providing~~provide consultation services to legal assistance providers for case reviews and evaluations;

(6) ~~participation~~participate in policy advocacy;

(7) ~~providing~~provide training to the staff of legal assistance providers and other volunteer pro bono attorneys;

(8) ~~making~~make presentations to groups of poor persons regarding their rights and obligations under the law;

(9) ~~providing~~provide legal research;

(10) ~~providing~~provide guardian ad litem services;

(11) ~~providing~~provide assistance in the formation and operation of legal entities for groups of poor persons; and

(12) ~~serving~~serve as a mediator or arbitrator at no fee to the client-eligible party.


## ~~RULE 6-3.7      EMERITUS SPECIALIST STATUS~~

~~**(a) Purpose.** The purpose of emeritus specialist status is to recognize the past and continuing contribution of a certified lawyer in the advancement of the speciality area through related career activities that do not constitute the actual practice of law. For purposes of this rule, the "practice of law" means legal work performed for purposes of rendering legal services, advice, or representation.~~

~~**(b) Applicability.** An applicant who seeks emeritus specialist status shall:~~

~~(1) be currently board certified by The Florida Bar;~~

~~(2) be a member of The Florida Bar in good standing;~~

~~(3) no longer be engaged in the practice of law; and~~

~~(4) otherwise comply with the applicable rules and policies governing emeritus specialist status.~~

**(c)    Qualifications.**  To qualify for emeritus specialist status, a member shall:

(1)  not engage in the active practice of law;

(2)  demonstrate integrity and professionalism, and submit to peer review as required by the board of legal specialization and education;

(3)  promptly report to the board of legal specialization and education any disciplinary complaints or malpractice actions filed against the member;

(4)  file the annual audit and pay the annual fee; and

(5)  complete the required application and pay the specified fee.

**(d)    Communication.**  As an emeritus specialist, the member must:

(1)  refrain from any written or oral communication that might be misconstrued as client solicitation for legal services; and,

(2)  identify emeritus specialist status in all written or oral communication concerning board certification.

**(e)    Termination of Emeritus Specialist Status.**  At such time as the member elects to resume the practice of law, the member may regain recertification as a "certified specialist" upon:

(1)  completion of all requirements for recertification within a time frame to be determined by the board of legal specialization and education; and

(2)  completion of the required application and payment of the specified fee.

**(f)    Waiver.**  On special application and for good cause shown, the board of legal specialization and education may waive any portion of this rule if it determines such a waiver to be in the best interest of the certification program and emeritus status.

**(g)   Revocation.**  ~~Existing rules relating to certification revocation shall also apply to emeritus specialist status.~~

**(h)   Exemption.**  ~~During the 6 years following the effective date of this rule, any member formerly certified by The Florida Bar, whose certificate lapsed or was otherwise not renewed, may apply for emeritus status and qualify for an exemption from the provision that requires current certification.  The applicant must demonstrate compliance with all other requirements of this rule.  An applicant formerly certified by The Florida Bar, but whose certificate was revoked, is ineligible for this exemption.~~

## RULE 6-3.11     FEES

**(a)   [No Change]**

**(b)   Examination/Certification Fee.**  This fee must be paid before ~~the~~ taking ~~of~~ the examination for certification or before an applicant who otherwise qualifies receives a certificate.  This fee is not refundable.

**(c)   Annual Fee.**  This fee is assessed against each plan participant required to file an annual audit for a particular year.  Collection of the fee ~~shall~~ coincide<u>s</u> with the distribution of annual audit forms.

**(d) – (f) [No Change]**

**(g)   Emeritus Application Fee**.  ~~This fee must accompany the filing of an application for emeritus specialist status.  This fee is not refundable.~~

**(~~h~~<u>g</u>)   Course Evaluation Fee.**  This fee is assessed against course sponsors that seek continuing legal education credit hours required under the plan.  This fee is not refundable.

**(~~i~~<u>h</u>)   Individual Credit Approval Fee.**  This fee is assessed against applicants or plan participants to cover administrative costs of processing a credit request where a sponsor has not sought course approval under the plan.

**CHAPTER 6 LEGAL SPECIALIZATION AND EDUCATION PROGRAMS**

## 6-29. STANDARDS FOR BOARD CERTIFICATION IN JUVENILE LAW

## RULE 6-29.1    GENERALLY

A lawyer who is an active member in good standing of The Florida Bar and who meets the standards prescribed below may be issued a certificate identifying the lawyer as "Board Certified in Juvenile Law." The purpose of the standards is to identify those lawyers who practice juvenile law and have the special knowledge, skills, and proficiency, as well as the character, ethics, and reputation for professionalism, to be properly identified to the public as board certified in juvenile law.

## RULE 6-29.2    DEFINITIONS

(a)  **Juvenile Law.** "Juvenile law" is the area of law that inherently and directly impacts children. It includes, but is not limited to, dependency, delinquency, and termination of parental rights matters. It does not include adoption matters or matters arising in the context of family law proceedings not consolidated with dependency or termination of parental rights matters.

(b)  **Trial.** A "trial" is defined as substantially preparing a case for court, offering testimony or evidence, or cross-examination of witness(es), in an adversarial proceeding before a trier of fact, and submission of a case to the trier of fact for determination of the matter.

(c)  **Appellate proceeding.** An "appellate proceeding" is defined as an action in a state or federal court seeking review of a decision of a lower tribunal.

(d)  **Practice of Law.** The "practice of law" for this area is defined in rule 6-3.5(c)(1).

## RULE 6-29.3    MINIMUM STANDARDS

(a)  **Minimum Period of Practice.** The applicant must have been substantially engaged in the practice of law for at least 5 years immediately preceding the application date.

(b)  **Practice Requirements.** The practice requirements are as follows:

(1)    *Substantial Involvement*.  The applicant must demonstrate substantial involvement in the practice of juvenile law during 3 of the last 5 years, immediately preceding application.

(2)    *Practical Experience*.  The applicant must demonstrate substantial practical experience in juvenile law by providing examples of service as the lead advocate on behalf of a governmental entity, a child, a parent, a guardian, a foster parent, or a child's relative with standing to litigate, in a minimum of 20 fully adjudicated trials or appellate proceedings arising from petitions for dependency, termination of parental rights, or delinquency.  If at least 10 of the trials or appeals required by this provision occurred during the 5 years immediately preceding application, the requirements of rule 6-29.3(b)(1) are met.

(3)    *Other Experience*.  On good cause shown, the juvenile law certification committee may substitute other experience in juvenile law as defined for the portion of the trials or appellate proceedings as it deems appropriate.  This experience may include, but is not limited to:

(A)    handling school issues, including disciplinary issues and educational planning matters, participating in placement determinations, and the development of treatment and alternative plans;

(B)    dealing with matters relating to governmental benefits;

(C)    advocacy after termination of parental rights;

(D)    advocacy before the Florida Department of Children and Families or other agencies;

(E)    advocacy in juvenile delinquency matters other than trial or appellate proceedings;

(F)    representation at administrative proceedings; and

(G)    resolving health care matters.

**(c)** **Peer Review.**

(1)     The applicant must submit the names and addresses of 6 lawyers, who are neither relatives nor current associates or partners nor who practice in the same governmental entity as the applicant.  At least 4 of the references must be members of The Florida Bar.  Individuals serving as references must have experience in juvenile law and be sufficiently familiar with the applicant to attest to the applicant's special competence in juvenile law, as well as the applicant's character, ethics, and reputation for professionalism in the practice of law.

(2)     The applicant must submit the name and address of 1 judge before whom the applicant has appeared in a juvenile law matter within the 5-year period immediately preceding application to attest to the applicant's competence in juvenile law, as well as the applicant's character, ethics, and reputation for professionalism.

(3)     The board of legal specialization and education and the juvenile law certification committee may authorize references from persons other than lawyers and may also make additional inquiries it deems appropriate to determine the applicant's qualifications for certification.

**(d)** **Education.**  The applicant must demonstrate completion of 50 credit hours of approved continuing legal education in juvenile law during the 3-year period immediately preceding the date of application.  Accreditation of educational hours is subject to policies established by the juvenile law certification committee or the board of legal specialization and education.

**(e)** **Examination.**  The applicant must pass an examination administered uniformly to all applicants to demonstrate sufficient knowledge, proficiency, experience, and professionalism in juvenile law to justify the representation of special competence to the legal profession and the public.

**(f)** **Exemption.**  An applicant who meets the standards set forth in subdivisions (a) - (d) of this rule and those of rule 6-3.5(d) are exempt from the examination.  This exemption is only applicable to those applicants who apply within the first 2 application filing periods from the effective date of these standards.

## RULE 6-29.4    RECERTIFICATION

During the 5-year period immediately preceding application, an applicant must satisfy the following requirements for recertification:

**(a)    Substantial Involvement.**  The applicant must demonstrate continuous and substantial involvement in juvenile law throughout the period since the last date of certification or recertification.

**(b)    Trials or Appellate Actions.**  The applicant must have had sole or primary responsibility in at least 10 trials or appellate actions involving juvenile law.  When primary responsibility is used to meet this requirement, the applicant must specifically identify any co-counsel and demonstrate to the satisfaction of the juvenile law certification committee that the applicant's level of participation was substantial and direct.  On good cause shown, the juvenile law certification committee may substitute other experience for any portion of the trials or appellate proceedings it deems appropriate.  This experience may include, but is not limited to, the matters set forth in Rule 6-29.3(b)(3).  Compliance with this provision constitutes a prima facie showing of compliance with the requirements of rule 6-29.4(a).

**(c)    Education.**  The applicant must demonstrate completion of at least 50 credit hours of approved continuing legal education in juvenile law certification.  Accreditation of educational hours is subject to policies established by the juvenile law certification committee or the board of legal specialization and education.

**(d)    Peer Review.**

(1)    The applicant must submit the names and address of at least 4 lawyers who are neither relatives nor current associates or partners nor who practice in the same governmental entity as the applicant, as references to attest to the applicant's substantial involvement and competence in juvenile law, as well as the applicant's character, ethics, and reputation for professionalism.  These lawyers must have experience in juvenile law and be familiar with the applicant's practice.

(2)    The applicant must submit the name and address of at least 1 judge before whom the applicant has appeared within the last 5 years to attest to the applicant's competence in juvenile law, as well as the applicant's character, ethics, and reputation for professionalism.

(3)     The juvenile law certification committee may, at its option, send reference forms to other lawyers and judges, as well as any other person the committee deems appropriate.


## RULE 10-2.1     GENERALLY

Whenever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:

**(a) – (b) [No Change]**

**(c)   Nonlawyer or Nonattorney.**  For purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar. This includes, but is not limited to, lawyers admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred lawyers, and lawyers who have resigned from The Florida Bar.  A suspended lawyer, while a member of The Florida Bar during the period of suspension as provided elsewhere in these rules, does not have the privilege of practicing law in Florida during the period of suspension.  For purposes of this chapter, it shall constitute the unlicensed practice of law for a lawyer admitted in a ~~state~~jurisdiction other than Florida to advertise to provide legal services in Florida which the lawyer is not authorized to provide.

**(d) – (n) [No Change]**


## RULE 18-1.1     PURPOSE

The purpose of this chapter is to expand the delivery of legal assistance services to military personnel stationed in the state of Florida.  This chapter authorizes military ~~attorneys~~lawyers licensed to practice law in jurisdictions other than Florida to be certified to practice before Florida courts while formally assigned as a legal assistance ~~attorney~~lawyer at a military base in the state of Florida.  Nothing contained in this chapter limits the scope of practice or services provided by legal assistance lawyers under Title 10, United States Code, section 1044, and applicable service regulations.

**RULE 18-1.2      DEFINITIONS**

(a)   **Authorized Legal Assistance ~~Attorney~~Lawyer.**   An "authorized legal assistance ~~attorney~~lawyer" is any person who:

(1) – (2)      [No Change]

(3)      is assigned to an installation, unit, and/or activity located within the geographic limitations of the courts of the state of Florida; and

(4)      ~~has completed~~completes The Florida Bar Young Lawyers Division Practicing with Professionalism program (Basic Skills Course Requirement) within the time required by rule 6-12.3; and

(5)      appears in connection with official duties as a legal assistance ~~attorney~~lawyer.

(b)   **[No Change]**

(c)   **Supervising ~~Attorney~~Lawyer.**   A "supervising ~~attorney~~lawyer" ~~as used herein~~ is a member in good standing of The Florida Bar who supervises an authorized legal assistance ~~attorney~~lawyer engaged in activities permitted by this chapter.   The supervising ~~attorney~~lawyer must:

(1)      be employed by or be a participating volunteer for an approved legal assistance office (to specifically include military reserve ~~attorneys~~lawyers); and

(2)      assume personal professional responsibility for supervising the conduct of the matter, litigation, or administrative proceeding in which the authorized legal assistance ~~attorney~~lawyer participates.

(d)   **Authorized Legal Assistance Client.**   An "authorized legal assistance client" is:

(1) – (3)      [No Change]

(4)      ~~for purposes of settling the affairs~~the surviving family members who are Florida residents of an active duty military member who died while in

active military service for purposes of settling the deceased military member's affairs, ~~the surviving family members of such decedent who are otherwise residents of the state of Florida.~~

## RULE 18-1.3      ACTIVITIES

(a)  **Permissible Activities.**  An authorized legal assistance ~~attorney~~lawyer, in association with an approved legal assistance office and under the supervision of a supervising ~~attorney~~lawyer, may perform the following activities:

(1)      appear in any court or before any administrative tribunal in this state on behalf of an authorized legal assistance client, provided the person on whose behalf the authorized legal assistance ~~attorney~~lawyer is appearing has consented in writing to that appearance and a supervising ~~attorney~~lawyer has given written approval for that appearance;

(2)      prepare pleadings and other documents to be filed in any court or before any administrative tribunal in this state in any matter in which the authorized legal assistance ~~attorney~~lawyer is involved, provided all notices of appearance, pleadings, and documents bear the ~~attorney's~~lawyer's name, the name of the bar to which admitted, that jurisdiction's bar number, and the legend "Rule 18 Military Legal Assistance ~~Attorney~~Lawyer"; or

(3)      engage in such other preparatory activities as are necessary for any matter in which the authorized legal assistance ~~attorney~~lawyer is involved.

~~Nothing contained herein shall limit the scope of services provided by legal assistance attorneys under Title 10, United States Code, section 1044, and applicable service regulations.~~

## RULE 18-1.4      SUPERVISION AND LIMITATIONS

(a)  **Supervision by ~~Attorney~~Lawyer.**  An authorized legal assistance ~~attorney~~lawyer must perform all activities authorized by this chapter under the supervision of a supervising ~~attorney~~lawyer.

(b)  **Representation of Bar Membership Status.**  Authorized legal assistance ~~attorneys~~lawyers permitted to perform services ~~under this chapter~~ are

not, and ~~shall~~may not represent themselves to be, members in good standing of The Florida Bar licensed to practice law in this state.

**(c)   Range of Legal Issues for Which Representation is Permitted.**  An authorized legal assistance ~~attorney~~lawyer may appear in court on behalf of authorized legal assistance clients provided the appearance is made concerning a civil matter limited to ~~1 of~~ the following actions:

(1) – (6)      [No Change]

(7)    any other proceedings if otherwise permitted by applicable law regarding appearances by foreign ~~attorneys~~lawyers.


## RULE 18-1.5      CERTIFICATION

Permission for an authorized legal assistance ~~attorney~~lawyer to perform services ~~under this chapter shall~~will become effective ~~upon filing with and~~ approval by the clerk of the Supreme Court of Florida. ~~of:~~ The person seeking approval must file the following:

**(a)**   a letter from the commanding officer of the approved legal assistance office stating that the authorized legal assistance ~~attorney~~lawyer is currently assigned with that legal assistance office and that ~~an attorney~~a Florida Bar member employed by or participating as a volunteer with that legal assistance office will assume the required duties of the supervising lawyer~~attorney required hereunder~~;

**(b)**   a certificate from the highest court or agency in ~~the~~any state, territory, or district in which the authorized legal assistance ~~attorney~~lawyer is licensed to practice law certifying that the authorized legal assistance ~~attorney~~lawyer is a member in good standing and has a clear disciplinary record, and advising of any pending complaints and/or investigations involving the authorized legal assistance ~~attorney~~lawyer; and

**(c)**   a sworn statement by the authorized legal assistance ~~attorney~~lawyer that the ~~attorney~~lawyer:

(1)    has read and ~~is familiar with~~will abide by chapter 4 of the Rules Regulating The Florida Bar as adopted by the Supreme Court of Florida ~~and will abide by the provisions thereof~~;

(2)     has completed or will complete The Florida Bar Young Lawyers Division Practicing with Professionalism program (Basic Skills Course Requirement) within the time required by rule 6-12.3; and

(3)     submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined by chapter 3 and rule 18-1.7 of the Rules Regulating The Florida Bar, and authorizes the practitioner's home state to be advised of any disciplinary action taken in Florida.